CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 3 1 2009

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL A. PHILLIPS, | )<br>)<br>) |
| Plaintiff, | ) Case No. 7:09CV00098<br>) |
| v. | )<br>) **MEMORANDUM OPINION** |
| POCAHONTAS STATE CORR.<br>CENTER, | )<br>) By: Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

Plaintiff Michael A. Phillips, a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that while incarcerated in the Pocahontas State Correctional Center ("PSCC"), he was exposed to paint fumes that caused him to have breathing problems and suffer other health consequences. He sues PSCC for $100,000. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

## Background

Phillips alleges the following sequence of events on which he bases his claims. On July 21, 2008, at approximately 12:00 a.m., inmates came into the cell block ("pod") where Phillips was housed and began to paint with an "'oil based' Shermin Williams Industrial Enamel paint." Because the ventilation system in the block was not working properly (and had not been working properly

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

for some time previously), the air in the area quickly became "contaminated" by the paint fumes. "It was also very hot and there was no air flow whatsoever" in the pod or the cells. Phillips began having trouble with his breathing and asked a correctional officer if he could go to the medical unit.[2] At 1:55 a.m., the officer signed a "trip pass" for Phillips and had him escorted to the medical unit. Phillips explained to the medical staff person that his breathing was "deficient" because of the strong paint fumes and inadequate ventilation in his pod. Medical personnel placed him in a medical isolation unit where he was to rest and try to regain normal breathing so that he could be thoroughly examined. He developed a severe headache and felt cold. When he asked for some pain medication for the headache, the nurse on duty told him that "it would be too much trouble to treat him and keep him in the infirmary because she would have to change the bed log and take him from the POD and essentially keep him in medical isolation." He was then sent back to his own pod. It was still hot, the inmate painters were still at work, and the pod still reeked with paint fumes. Phillips retrieved the list of ingredients from one of the cans of paint.

Later on July 21, 2008, Phillips wrote an informal request, asking for the name of the person who authorized the painting under such conditions, but was unsuccessful in obtaining this information. He then filed a grievance about the paint fumes and asked to speak to someone from Internal Affairs. The warden responded to the grievance, stating that the matter had been investigated and that although Phillips had been seen in medical on July 24, 25, and 28, 2008, he had not requested medical treatment immediately after the exposure to the paint fumes. Phillips describes this response as a cover up and provides the court with a copy of the "trip pass" signed

---

[2] Phillips also complained about the fumes to the pod officers, and they told him that because they had no control over the ventilation system, he would have to ask the unit manager, Mr. Lockhart.

on July 21, 2008, just after the painting began. Phillips appealed the warden's response, adding that he had sought medical treatment on July 21, 2009, which was not provided. The regional director upheld the finding that Phillips' grievance was unfounded. Phillips alleges that as a result of the exposure to paint fumes, he "has recently been found to have an irregular heartbeat which he never had before."

Phillips then filed this lawsuit. He claims that PSCC "willfully put [his] health" in danger by subjecting him to the harmful paint fumes and by not complying with the "(NIOSH) material safety data sheet which simply stated Industrial use only harmful if inhaled may [a]ffect the [brain] or nerv[ous] system, causing dizziness, headache or nausea. Contain[s] solvents which can cause perman[ent brain] and nerv[ous] system damage." He submits copies of other prison complaint forms that he had filed earlier about the pod ventilation being inadequate: (1) an emergency grievance filed at 8:20 a.m. on February 16, 2008, asserting that Phillips had been up since 2:00 a.m. with a headache from floor wax fumes because the pod was "not properly ventilated to rid [the air of] the toxic smell"; the response was: "This is not an emergency grievance. Pod cleaning and waxing takes place once a month. The pods have ventilation"; (2) an informal complaint filed February 20, 2008, complaining that because the ventilation was not working properly, Phillips could smell second-hand cigarette smoke from other cells, and the floor wax odor was "extremely loud"; the response was that someone would be contacted about checking the ventilation in Phillips' cell; and (3) emergency grievance filed 3:05 a.m. on March 29, 2008, complaining about the odor of floor wax and poor ventilation in the pod; the response was that the grievance did not state an emergency and the "pod door was opened to let the smell out."

## Discussion

As a preliminary matter, Phillips cannot maintain his action against PSCC, since such institutions are not "persons" subject to suit under 42 U.S.C. §1983. See McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890 (E.D. Va. 1992). In any event, however, Phillips fails to allege facts stating any actionable claim against anyone.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling v. McKinney, 509 U.S. 25, 31 (1993).

To satisfy the subjective element of a conditions claim, plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm. Farmer v. Brennan, 511 U.S. 825, 835 (1994). To prove deliberate indifference by an official, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832.

-4-

The court cannot find that plaintiff's complaint states any claim of constitutional significance. First, Phillips does not allege facts on which he could prove that the paint fumes presented a serious risk of harm. Indeed, he does not allege that any of the other inmates, either those sleeping in the pod or those who were applying the paint, suffered symptoms similar to his as a result of inhaling the fumes. He also offers nothing more than his own perceptions to support his assertion that the pod ventilation system was substandard or not in proper working order. Indeed, Phillips fails to offer any evidence on which he could prove that his own alleged medical problem (an irregular heartbeat) was caused or aggravated by exposure to paint fumes.

Even assuming that Phillips could prove that the fumes were trapped in the pod in a concentration level high enough to present a substantial risk of harm to him and the other inmates, he fails to allege facts demonstrating officials' deliberate indifference to that risk. When he alerted officers on July 21, 2008 that he was having trouble breathing, they immediately arranged for him to go to the medical unit, where he remained until the breathing trouble subsided. Although he alleges that the fumes were still strong when he returned to the pod, he does not allege that he continued to suffer breathing problems or that he made further complaints to the pod officers about the fumes or the ventilation. His informal complaint forms in February 2008, asserting that the ventilation system was not working well enough to prevent unpleasant odors from gaining entry to his cell, were not sufficient to put officials on notice that the paint used in the pod in July created a substantial risk of harm to inmates in the pod. Therefore, the court is satisfied that Phillips could present no set of facts consistent with his current, detailed allegations that would state any claim of constitutional significance actionable under § 1983.

Phillips also complains that he was "denied his proper care and due process in this matter and was further subjected to the harmful effects of a vi[n]dictive staff and warden who not only denied the claim, but also fabricated to support that debatable denial in this matter." To the extent that he is arguing here that the nurse denied him medical care, he fails to demonstrate a constitutional claim. A prison official's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976); Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999); Sheldon v. C/O Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995). While Phillips refers to his headache on July 21, 2008 as severe, he does not allege facts indicating that it required a doctor's care, that it lasted more than a few hours, or that he filed any additional requests for pain medication after being returned to the cell block. Hence, the court finds his allegations insufficient to show any serious medical need for treatment. The court will dismiss any medical claim, pursuant to § 1915A(b)(1).

Finally, to the extent that Phillips complains about prison officials' reaction and responses to his grievances about the paint fumes incident, he has no constitutional claim. Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72 (4th Cir. 1994). Therefore, prison officials' failure to respond to grievances in the manner that Phillips believes appropriate–by admitting Phillips visited the medical unit on July 21 and implementing an in-depth investigation of his complaints–does not state any claim of constitutional significance. Certainly, Phillips has no constitutional right to an investigation, and he does not allege facts indicating that officials' alleged failure to investigate caused him any further harm.

## Conclusion

For the stated reasons, the court concludes that Phillips' allegations in the complaint do not state any claim cognizable under § 1983.[3] Therefore, the court will dismiss the complaint without prejudice, pursuant to § 1915A(b)(1). An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 31st day of March, 2009.

*[signature]*
United States District Judge

---

[3] To the extent that Phillips intends to bring any claims arising under state law, such claims are not independently actionable under § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Furthermore, the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). All such claims will be dismissed without prejudice accordingly.